UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

Momen Mahmoud Moussa
        (Plaintiff)

vs.

Ann Marie T. Sullivan
Commissioner of NYS Office of Mental Hygiene
        (Defendant)

-----------------------------------------------------------X



Case No. 22 CV **CV 22-3709**

Civil Rights Complaint Pursuant
to 42 USC 1983

Jury Trial Demanded **DONNELLY, J.**

**BULSARA, M.J.**

Plaintiff in the above captioned action alleges as follows:

### JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

### PARTIES

2.    Plaintiff: Momen M Moussa
       Address: 224 95th Street Brooklyn NY 11209

3.    Defendant: Ann Marie T. Sullivan
       Address: NYS Office of Mental Hygiene 44 Holland Ave Albany NY 12229

### FACTS

4. Since graduating high school in 2006 plaintiff and his father have had domestic issues. Plaintiffs father called the police several times to the residence wishing the police officers would evict the plaintiff immediately. Arguments arose over which major plaintiff would choose, video games, joining the Army, and many frivolous complaints which the police usually did nothing over.

5. In 2016, plaintiff suffered a severe soccer injury and would continue to work only up until 2017. Plaintiff was diagnosed with TMJ and herniated discs in his back and in addition suffered from MPS, a condition which causes pain in the soft tissue all over his body. In January 2017 plaintiff stopped working and stayed at home.

6. Over the course of the year of 2017, plaintiff and his father would have several arguments about staying home and not going to college or work. Plaintiff tried to explain to his father several times that he was injured and could not work and was seeing his doctors.

7. Plaintiff filed 2 police reports against his father in 2017, once in the summer where plaintiff's father broke plaintiff's phone and in December of 2017 when plaintiff's father was removing property from plaintiff when he was not home and interfering in a lawsuit the plaintiff filed pro se. Police discouraged plaintiff from pressing charges and refused to investigate further.

8. On January 17, 2018, plaintiff's father called 911 and lied to to police officers reporting that plaintiff was throwing things around the house. Over a dozen police officers showed up and asked the plaintiff to come to a hospital emergency room. Plaintiff refused. Officers then arrested plaintiff and he was taken to NYU Langone Hospital in Brooklyn. A nurse practitioner made the determination after speaking to plaintiff's father that plaintiff needed to be held for observation. Dr. Njoku decided to keep plaintiff and plaintiff demanded to go to court before taking any medications. Dr. Njoku, after realizing that plaintiff's father was lying decided to release plaintiff on the condition that he see a doctor as an outpatient. Plaintiff agreed but when released did not go to the appointment after being released on January 24, 2018.

9. In February of 2018 plaintiff and his father had an argument about shaving his beard. When plaintiff refused to shave plaintiff's father again called 911 but this time reported that plaintiff had pushed him.

Plaintiff did not know of the allegation until going to court against Maimonides Hospital. Dr. Martin Nau testified that plaintiff was dangerous and needed treatment. On cross examination Dr. Martin Nau did not even know what dangerousness (self or others) allegation was made against plaintiff by his father. The hospital also did not confront the plaintiff before trial of the allegation. Plaintiff nonetheless lost the hearing and returned to Maimonides Hospital for court ordered treatment where he stayed for more than a month and a half.

10. Plaintiff would be civilly committed an additional 5 times, including 2 times when plaintiff called 911 to file charges, once against his mother and once against his father. Plaintiff has also tried to file charges against other individuals but when the police hear that the plaintiff has a mental health history they refuse to listen any further.

11. In addition plaintiff is now ineligible for many jobs and rights due to his mental health record.

## Causes of Action

12. Plaintiff alleges that NYS Mental Hygiene law does not satisfy due process (liberty/confinement/credibility/etc.) because it never scrutinizes the allegation of danger to self or others. Plaintiff believes a probable cause hearing should be required before a doctor-patient relationship is created. Allegations of dangerousness may be false and/or exaggerated and must be scrutinized before a doctor makes a diagnosis as a diagnosis on its own is damning even without dangerousness. In NYS, if you are not seeing your doctors and taking medications you are considered dangerous. (4th and 5th Amendment, doctor performs a search and seizure when assessing a patient and without dangerousness to self or others established is without due process)

13. Plaintiff alleges that NYS Mental Hygiene law needs an exception to Rules of Evidence 8.43,

which states that information gathered by a doctor is not hearsay. When the party making allegations of dangerousness is an adverse party to the patient, and doctors are not trained investigators, they must take the allegations as fact. This is unfair to the patient who may be a victim of a lying domestic abuser as alleged in this case. Due process requires that the patient be able to confront his accuser for scrutiny if not in a probable cause hearing then at the order to medicate or release hearings. If a family member wants to commit another, they should make time to testify against a patient if they are in fact looking at the best interests of a family member.

14. Plaintiff alleges that due process requires that there be additional provisions to NYS Mental Hygiene Law that would allow a dispute resolving body so that diagnosed patients can challenge or appeal their diagnoses such as in a case of false accusations or domestic abuse. Plaintiff has no problem getting his father to admit that he lied to police and doctors outside of a court room. Plaintiff can simply record his father saying so (with a mobile phone discreetly for example) but is worried about the legal consequences for his father, although plaintiff's father does not show the same care when using NYS Mental Hygiene law as a disciplinary tool, which is not its intent. Plaintiff should never have been in the situation to begin with if the law had proper due process. Some states have criminal penalties for those who misuse civil commitment law.

15. Plaintiff believes these additional steps and exceptions must be made to ensure a civil commitment is done as accurately as possible. Doctors are forced to believe accusations for fear of malpractice suits or making a mistake with a patient. They are not trained investigators or interrogators. Doctors may also be commercially motivated as are the hospitals. Psychiatry itself is not an objective medical field but rather full of hypotheticals and subjectivity. Yet a diagnosis is crippling to the reputation of the patient, and so long as the doctor acted within the bounds of medically accepted medicine, there is no chance at malpractice. A doctor-patient relationship therefore should not be formed easily by law or the

results with the context are predictable and manipulatable.

## Relief Sought

16. An injunction to NYS Mental Hygiene Law, especially Article 9, until the law takes into account its flaws in assessing and determining dangerous behavior.

17. Removal of plaintiff's name from ever having been diagnosed involuntarily under NYS Mental Hygiene including state and federal (e.g. NICS/gun rights) databases.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: June 22 2022

X _____