UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
**MOMEN MAHMOUD MOUSSA**,                                      :
                                                               :
                              Plaintiff,                       :
                                                               :   **MEMORANDUM AND ORDER**
                   – against –                                 :   22-CV-3709 (AMD) (SJB)
                                                               :
**ANN MARIE T. SULLIVAN**, *Commissioner of*                   :
*NYS Office of Mental Hygiene*,                                :
                                                               :
                              Defendant.                       :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On June 22, 2022, the *pro se* plaintiff filed this action pursuant to 42 U.S.C. § 1983.  The

plaintiff's application to proceed *in forma pauperis* is granted for the limited purpose of this

Order, but the complaint is dismissed in its entirety.

## BACKGROUND

In the complaint, the plaintiff describes a history of domestic conflicts with his father,

with whom he resides.  The following factual allegations are taken from the complaint and are

assumed to be true for purposes of this Order.

Since 2006, the plaintiff and his father have had frequent arguments, which led to "many

frivolous complaints" to the police.  (ECF No. 1 ¶ 4.)  The "[p]laintiff[']s father called the police

several times to the residence wishing the police officers would evict the plaintiff immediately."

(*Id.*)  In 2017, the plaintiff filed two police reports against his father.  (*Id.* ¶ 7.)  "On January 17,

2018, [the] plaintiff's father called 911 and lied to [] police officers[,] reporting that plaintiff was

throwing things around the house."  (*Id.* ¶ 8.)  The officers requested that the plaintiff go with

them to a hospital emergency room.  (*Id.*)  When the plaintiff refused, the officers arrested him

and took him to a hospital, where he was admitted for psychiatric care.  (*Id.* ¶ 8.)  After speaking with the plaintiff's father, "[a] nurse practitioner made the determination . . . that [the] plaintiff needed to be held for observation."  (*Id.*)  The plaintiff alleges that a doctor, "after realizing that [the] plaintiff's father was lying[,] decided to release [the] plaintiff on the condition that he see a doctor as an outpatient."  (*Id.*)  The plaintiff was released on January 24, 2018, but he did not go to scheduled outpatient services.  (*Id.*)  In February 2018, the plaintiff's father called the police and reported that the plaintiff had pushed him.  (*Id.* ¶ 9.)  The plaintiff contested his commitment to a hospital at a court hearing, but he "lost the hearing and returned to [the hospital] for court ordered treatment where he stayed for more than a month and a half."  (*Id.*)  Thereafter, the "[p]laintiff would be civilly committed an additional 5 times, including 2 times when [the] plaintiff called 911" to complain about his parents.  (*Id.* ¶ 10.)  As a result of this history, the "plaintiff is now ineligible for many jobs and rights due to his mental health record."  (*Id.* ¶ 11.)  Moreover, he is unable to get police officers to take seriously his complaints against his parents and other individuals.  (*Id.* ¶ 10.)

The plaintiff alleges that New York's Mental Hygiene Law "does not satisfy due process" because it allows doctors to make designations of "dangerousness" based on reports of family members and without a probable cause hearing or another opportunity for the patient to confront the accuser.  (*Id.* ¶¶ 12-13.)  He argues that a probable cause hearing should be held prior to the doctor's examination of the patient.  (*Id.* ¶ 12.)  The plaintiff asserts: "Due process requires that the patient be able to confront his accuser for scrutiny," and that an additional "dispute resolving body" should hear challenges to "diagnoses such as in the case of false accusations or domestic abuse."  (*Id.* ¶¶ 13-14.)  The plaintiff requests an "injunction to NYS Mental Hygiene Law, especially Article 9, until the law takes into account its flaws in assessing

and determining dangerous behavior," and that his name and mental health history be removed from "state and federal (e.g. NICS/gun rights) databases." (*Id.* ¶¶ 16, 17.)

## LEGAL STANDARD

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks, alterations and citations omitted).

Because the plaintiff is proceeding *pro se*, I construe his complaint liberally, and evaluate it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quotations and citations omitted). Nevertheless, I must dismiss an *in forma pauperis* action if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**DISCUSSION**

I.      **The Plaintiff's Challenge to New York's Mental Hygiene Law**

The plaintiff challenges the constitutionality of New York's Mental Hygiene Law.  He

claims that the law allows doctors to make designations of "dangerousness" based on reports of

family members and without a probable cause hearing or other opportunity for the patient to

confront the accuser, and that it "does not satisfy due process."  (ECF No. 1 ¶¶ 12, 13.)

The plaintiff does not specify which provisions of the New York's Mental Hygiene Law

he is contesting.  His reference to determinations of dangerousness suggests that he is

challenging New York Mental Hygiene Law section 9.39, which provides for emergency

involuntary admission to a mental health facility upon medical examination and certification by

staff physicians that the patient is "alleged to have a mental illness for which immediate

observation, care, and treatment in a hospital is appropriate and which is likely to result in

serious harm to himself or others."  N.Y. Mental Hyg. Law § 9.39(a); *see also id.* § 9.37.  The

law includes limitations on retention periods and provides for independent examination and

confirmation by additional doctors and for notice to the patient, mental hygiene legal services,

and others.  *Id.* § 9.39(a).  The law further gives patients (or others acting on their behalf) the

right to contest involuntary commitment through a state court hearing within five days from the

date of the request for a hearing.  *Id.*

The plaintiff does not allege that the Commissioner of New York State's Office of

Mental Hygiene, whom he names as a defendant, improperly applied the statutory provisions to

his case.  Rather, he mounts a facial challenge to the law itself, arguing that due process requires

that a patient have the opportunity to "challenge or appeal [his] diagnosis" and "confront his

accuser" in a probable cause hearing or before a "dispute resolving body."  (ECF No. 1 ¶¶ 12,

13.)  Federal courts have already rejected the same challenge to the New York Mental Hygiene

Law.  "New York's overall statutory scheme governing involuntary commitments has been held

facially sufficient to meet the requirements of due process."  *Rodriguez v. City of New York*, 72

F.3d 1051, 1062 (2d Cir. 1995) (citing "*Project Release v. Prevost*, 722 F.2d 960, 973-74 (2d

Cir. 1983)); *see also id.* at 1063 ("Though committing physicians are not expected to be

omniscient, [section 9.39 of] the statute implicitly requires that their judgment—affecting

whether an individual is to be summarily deprived of her liberty—be exercised on the basis of

substantive and procedural criteria that are not substantially below the standards generally

accepted in the medical community."); *Meadows v. City of New York*, No. 10-CV-286, 2011 WL

864832, at *6 (E.D.N.Y. Mar. 11, 2011) (reviewing Second Circuit case law and rejecting the

plaintiff's facial challenge to the Mental Hygiene Law).  Accordingly, the plaintiff's challenge to

the Mental Hygiene Law is dismissed.

## II.    Request to Remove Information from Databases

The plaintiff also asks the Court to remove his name and mental health information from

federal and state databases, including the National Instant Criminal Background Check System

("NICS").  He does not identify any grounds on which the Court could grant him this relief.  The

plaintiff has not alleged that inclusion of his information in these databases implicates any of his

constitutional rights or other federal laws.  The only database to which he refers is the NICS.

"New York Mental Hygiene Law § 7.09 sets forth a process for removing a name from the NICS

list by seeking a certificate of relief from disabilities, which is based on a determination as to

whether the 'person's record and reputation are such that such person will not be likely to act in a

manner dangerous to public safety and where the granting of the relief would not be contrary to

public safety.'"  *Houston v. Nassau Cnty. Police Dep't*, No. 20-CV-5253, 2020 WL 7643132, at

*3 (E.D.N.Y. Dec. 23, 2020) (quoting N.Y. Mental Hyg. Law § 7.09).  "If the application to be

removed from the list is denied, an individual may seek review in state court pursuant to Article

78 of the New York Civil Practice Law and Rules." *Id.* (quoting N.Y. Mental Hyg. Law § 7.09(2)). "It is settled law in this Circuit that 'an Article 78 proceeding provides the requisite post-deprivation process—even if a plaintiff failed to pursue it.'" *Montalbano v. Port Auth. of N.Y. & N.J.*, 843 F. Supp. 2d 473, 485 (S.D.N.Y. 2012) (quoting *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011)); *Johnson El ex rel. Johnson v. DeProspo*, No. 19-CV-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) ("Courts have held that a proceeding under Article 78 of the New York Civil Practice Law and Rules is an adequate remedy to challenge decisions with respect to firearms licenses."). The plaintiff does not allege that he has filed an application or initiated an Article 78 proceeding.

To the extent that the plaintiff challenges the information in his medical records, there is no remedy in federal court. A federal law, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), protects against the disclosure of health records and information without the patient's consent. *See* 42 U.S.C. §§ 1320d-1 to 1320d-7. The law authorizes the Secretary of Health and Human Services, a federal agency, to make and enforce regulations concerning the privacy of individually identifiable health information and providing a process by which individuals may challenge what is contained in their medical records. 45 C.F.R. § 164.526 ("The covered entity must permit an individual to request that the covered entity amend the protected health information maintained in the designated record set. The covered entity may require individuals to make requests for amendment in writing and to provide a reason to support a requested amendment, provided that it informs individuals in advance of such requirements."). However, there is no private right of action under HIPAA, which means that patients cannot enforce HIPAA provisions by filing lawsuits in federal court. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) (no express or implied private right of

action under HIPAA); *see also Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 496 (E.D.N.Y. 2014) (dismissing a plaintiff's request to review and challenge the accuracy of his medical records because HIPAA does "not provide a private cause of action through which individuals can enforce its provisions").

New York's Mental Hygiene Law § 33.16 gives patients the right, on written request and with certain limitations, to inspect their own records in the possession of mental health facilities and allows them to review and challenge the accuracy of materials contained in these records. N.Y. Mental Hyg. Law §§ 33.16(b), (c), and (g).  "To the extent that [the] [p]laintiff is seeking to review and challenge the accuracy of materials contained in her medical records, [the] [p]laintiff must follow the procedures set forth in New York Mental Hygiene Law § 33.16(g).  *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *7 (E.D.N.Y. Dec. 31, 2014).  Section 33.16(g) states the following:

> A qualified person may challenge the accuracy of information maintained in the clinical record and may require that a brief written statement prepared by him/her concerning the challenged information be inserted into the clinical record.  This statement shall become a permanent part of the record and shall be released whenever the clinical record at issue is released. . . .  A facility may place reasonable restrictions on the time and frequency of any challenges to accuracy.

N.Y. Mental Hyg. Law § 33.16(g).  The plaintiff does not identify the records he requested, nor does he say whether he followed the provided procedures for requesting review of the records, or whether he challenged the accuracy of the information contained in his clinical record.

However, even if the plaintiff could demonstrate a violation of section 33.16, a federal court cannot remedy that violation.  *See Gibson v. Rosati*, No. 13-CV-503, 2016 WL 11478234, at *6 (N.D.N.Y. May 19, 2016), *report and recommendation adopted*, 2016 WL 5390344 (N.D.N.Y. Sept. 27, 2016) (dismissing a plaintiff's claim regarding an alleged violation of § 33.16 because "[i]t is axiomatic that violations of state law alone are insufficient to state a

claim for section 1983 relief").  As the plaintiff has failed to identify any federal constitutional issue related to mental health databases, his request for injunctive relief is denied.

## CONCLUSION

For the reasons stated above, the complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  In light of the plaintiff's *pro se* status, the Court grants the plaintiff leave to file an amended complaint within 30 days.  If the plaintiff decides to file an amended complaint, it should be captioned "Amended Complaint" and bear the same docket number as this order, 22-CV-3709 (AMD) (SJB).  The plaintiff is advised that an amended complaint completely replaces his previous complaint, so he must include in the amended complaint all the necessary information to support his claims.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of Court is requested to send a copy of this order to the plaintiff and mark mailing on the docket sheet.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
        July 22, 2022